UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

Plaintiff,

                                        Case No. 15-20652-16

v.

                                        HON. GEORGE CARAM STEEH

JAMES ROBINSON (D-16),

Defendant.
_____/


ORDER DENYING DEFENDANT'S MOTIONS TO BAR
CELLULAR DATA REPORTS AND CAST REPORT AS
EVIDENCE [ECF NO. 1198, 1200] AND TO PRECLUDE TESTIMONY
OF GOVERNMENT'S OPINION WITNESS AT TRIAL [ECF NO. 1203]

        This matter is before the court on defendant James Robinson's three

motions in limine: to bar introduction of cellular data reports ("CDR") [ECF

No. 1198]; to bar introduction of FBI Special Agent Joseph Jensen's

Cellular Analysis Survey Team ("CAST") report [ECF No. 1200]; and to bar

the opinion testimony of Jensen or conduct a *Daubert* hearing [ECF No.

1203]. The motions have been briefed and responses have been filed by

the government. The court also had the opportunity to hear the testimony

of Special Agent Jensen, who testified during the first two trials held in this

case. The court heard oral argument on defendant's motions on October 9, 2018.

James Robinson is charged in the Sixth Superseding Indictment with conspiracy to commit racketeering, attempted murder and firearm offenses. Relevant to the pending motions are Counts 28, 29, 30, 31 and Overt Act 16, which allege that Robinson, along with co-defendant Billy Arnold, participated in the June 7, 2015 shooting of two victims outside a baby shower at the Athena Hall in Warren, Michigan.

Detroit Police previously identified a cell phone number for Robinson and obtained a search warrant for records associated with the phone number in April of 2016. In May of 2016, T-Mobile responded to the search warrant by providing CDRs in the form of an electronic Microsoft Excel spreadsheet. The spreadsheet contains data entries of cell site location information ("CSLI") covering the time period February 27, 2015 to May 2, 2016. This information instructs which cell towers the phone connected to during a given communication, the location of the cell towers, and which sector of the tower's coverage the phone was connecting within.

Despite requests by defendant's counsel, the government did not produce the T-Mobile records for Robinson's phone until May 2018, purportedly due to inadvertent oversight. On May 14, 2018, Robinson filed

a motion to be severed from his trial group in part so he could obtain his own expert to review the phone records and Jensen's analysis of those records. The court granted the motion to sever and reassigned Robinson to the trial group set for trial on October 9, 2018. The other defendants in that trial group entered guilty pleas, and a new trial date has not yet been set for Robinson, whose plea cut-off hearing is November 6, 2018.

## I.    CDRs – Cellular Data Reports

Defendant argues the Excel spreadsheet is not admissible as a business record under FRE 803(6) because it was prepared in anticipation of litigation. The reasons advanced by defendant are that the spreadsheet is a summary rather than a complete record, it is not in native format, and it would not even exist but for the search warrant request. In addition, defendant argues that due to the delay in providing the CDR to the defense, the reliability or accuracy of the report cannot be tested because the underlying data no longer exists.

The business records exception to the evidentiary rule against hearsay provides that a document is admissible if it satisfies five requirements:

> [1] the record was made at or near the time by--or from information transmitted by--someone with knowledge;

[2] the record was kept in the course of a regularly conducted activity of a business . . .;

[3] making the record was a regular practice of that activity;

[4] all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

[5] the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

The government anticipates that a T-Mobile custodian of records will testify that the phone company makes and keeps CDRs for its customers for various business- related reasons, maintains such records in a computer database in the ordinary course of business, and, in response to search warrant requests, pulls records from that database for a particular customer to make Excel spreadsheet reports like the one at issue here. The Supreme Court has acknowledged that "[w]ireless carriers collect and store CSLI for their own business purposes, including finding weak spots in their network and applying 'roaming' charges when another carrier routes data through their cell sites." *Carpenter v. United States*, 138 S. Ct. 2206, 2212 (2018).

Defendant takes particular issue with the fact that the CDR was produced in the  form of an Excel spreadsheet.  The Sixth Circuit holds that

as long as the underlying records qualify as business records, then reproductions of those records made pursuant to law enforcement requests also qualify as business records. A spreadsheet of financial account records for a customer of a payments processing company was held to be admissible as a business record under Rule 803(6). *United States v. Nixon*, 694 F.3d 623 (6th Cir. 2012). The court noted it was irrelevant that the exhibit itself was created for purposes of litigation because "all the information on [the exhibit] was kept in [the company's] electronic database," and "the electronic version of those records were created and kept in the regular course and practice of [the company's] business operations." *Id*. at 634.

When a phone company "respond[s] to a request for data that it had previously gathered and maintained for its own business purposes," the mere "fact that the print-out of this data in this particular format was requested for the litigation does not turn the data contained in the print-out into information created for litigation." *United States v. Burgos-Montes*, 786 F.3d 92, 120 (1st Cir. 2015). Instead, "the physical manner in which the exhibit was generated simply reflects the fact that the business records were electronic, and hence their production required some choice and offered some flexibility in printing out only the requested information." *Id*.

Defendant cites to *United States v. Ekiyor*, 90 F.Supp. 3d 735 (E.D.

Mich. 2015), in which the court found that a log of baggage transactions

produced by an airline was not a business record under Rule 803(6).  In

that case, the court found that the government could not lay the necessary

foundation - "that the information in the baggage log consists *solely* of a

subset of a larger underlying database that [the airline] keeps in the course

of its regularly conducted activities." *Id.* at 743 (emphasis added).  In

addition, the baggage log included statements that "appear[ed] to reflect

conclusions reached about underlying baggage data, rather than mere

replication of the underlying data itself." *Id.* at 743.  Neither of these issues

is present with regard to the CDRs.

Defendant's final argument is that he is prevented from challenging

the CDR because the records upon which it is based no longer exist.

Defendant urges the court to find that the CDRs are inadmissible under the

Confrontation Clause, which bars the admission of hearsay evidence that is

testimonial unless the witness is unavailable and the defendant had a prior

opportunity for cross-examination.  *Crawford v. Washington,* 541 U.S. 36,

68 (2004).  However, business records are generally considered not to be

testimonial and the Supreme Court has found they do not implicate the

Confrontation Clause.  *Id.* at 56; *Melendez-Diaz v. Massachusetts*, 557

U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.")

For the reasons stated above, defendant's motion in limine to bar introduction of the CDRs as evidence at trial is denied.

## II.    ESPA Software, CAST Report and Jensen's Testimony

This court previously issued an order denying co-defendant Corey Bailey's motion for a *Daubert* hearing and to preclude testimony of Special Agent Jensen (ECF No. 949, March 26, 2018).  Defendant Robinson joined in Bailey's motion.  Robinson now files new motions to preclude Jensen's testimony as an opinion witness and his use of the "CAST" exhibit.

Enterprise Sensory Processing and Analytics ("ESPA") is software that Jensen used to create the maps previously admitted at trial.  According to Jensen, the software synthesizes the information provided in the cellular data records, tower locations and coverage area, as well as the time and date of the crime and the potentially relevant phone numbers.  Jensen testified that in the past he has drawn out maps electronically using detailed spreadsheets and a program like "Streets and Trips."   He uses

ESPA to put all of the pieces together so he can create the maps and analyze the data.  This is how the CAST report was created.

Robinson argues that he needs access to the ESPA program in order to effectively cross-examine Jensen on his analysis.  Robinson explains that his expert witness approached the software provider Gladiator Forensics LLC and attempted to obtain information on ESPA.  The provider refused to provide any information and stated that the program is only available to law enforcement and is classified.

The Ninth Circuit reversed a defendant's child pornography conviction where the government refused to disclose the workings of an FBI computer program.  *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012).  The FBI used the computer program at issue in that case to obtain incriminating child pornography from the defendant's computer.  How the program obtained the information went directly to defendant's defense of whether he intentionally distributed the pornography or not.  *Id.* at 1112; *but see United States v. Pirosko*, 787 F.3d 358, 365-66 (6th Cir. 2015) (distinguishing *Budziak* where no evidence of government wrongdoing presented.

The government contends that ESPA does not do anything to manipulate the data that Jensen inputs.  One can perform the same function as ESPA using the call detail records, tower locations, and maps.

In fact, in the second trial, Bailey's counsel cross-examined Jensen by focusing on the assumptions and limitations of his conclusions. Jensen conceded he relied on the accuracy of the call detail records from the phone company, he agreed that experts could disagree on the meaning of "general vicinity", and he testified that the pie shaped sectors he created with ESPA do not show the accuracy of coverage. Robinson has the CAST report and the CDRs Jensen used to create the maps. In preparing his cross-examination, Robinson actually has access to more information than is typical because he can review Jensen's testimony from the two previous trials in this case.

Many of Robinson's objections to Special Agent go to the weight of his testimony, not its admissibility. This includes Jensen's training, publications, the precision of his maps, and the inability to state the proximity of a phone to a tower. The court addressed these issues in its previous order.

Now, therefore,

For the foregoing reasons, defendant Robinson's motion to bar introduction of cellular data reports, motion to bar introduction of FBI Special Agent Joseph Jensen's CAST report created using ESPA, and

motion to bar the opinion testimony of Jensen or conduct a *Daubert*

hearing are each DENIED.

IT IS SO ORDERED.

Dated: October 18, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record
on October 18, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---