UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JAMES ROBINSON (D-16),

    Defendant.
_____/

Case No. 15-20652-16

HON. GEORGE CARAM STEEH

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS
CELL SITE LOCATION INFORMATION RECORDS [ECF NO. 1220]

This matter is before the court on defendant James Robinson's motion to suppress cell site location information ("CSLI") records. The motion was fully briefed, and the court heard oral argument on November 6, 2018. Supplemental pleadings have been filed and the motion is ripe for determination.

James Robinson is charged in the Sixth Superseding Indictment with conspiracy to commit racketeering, attempted murder and firearm offenses. Relevant to the pending motions are Counts 28, 29, 30, 31 and Overt Act 16, which allege that Robinson, along with co-defendant Billy Arnold, participated in the shooting of two victims outside a baby shower at the Athena Hall in Warren, Michigan. The government intends to prove

Robinson's involvement in the Athena Hall shooting through, among other evidence, historical CSLI records for Robinson's cell phone number (313-948-8079), which will show his phone connected to particular cell towers on the day of the shooting.

The FBI investigated the Athena Hall shooting as part of its SMB investigation. The shooting occurred on June 7, 2015. A victim of the shooting, Darnell Canady, belonged to a rival gang and was on SMB's Instagram "hit list." Approximately a year later, on July 13, 2016, the FBI searched a residence on Coram Street in Detroit. Agents arrested James Robinson and others, and recovered four cell phones, including Robinson's phone that used number 313-948-8079.

Later in July 2016, the FBI interviewed a witness who identified Robinson as a participant in the Athena Hall shooting. The witness stated that Robinson was the driver of the Ford Taurus, and that Robinson borrowed the car from his cousin, Dajuan Talbert. The FBI corroborated this information when it interviewed Dajuan Talbert and his brother in early September 2016. The Talbert brothers said that Robinson borrowed the car on June 7, 2015; that Robinson's phone number was 313-948-8079 and that he had used that number for years; that Robinson called later the same day and told Dajuan Talbert to pick up the car at the Kmart parking

lot; and that the car had a bullet hole and broken tail light which were not there prior to loaning the car to Robinson.

The FBI's investigation into other members of the Seven Mile Bloods ("SMB") corroborated that Robinson used the phone number 313-948-8079 for years. When Corey Bailey was arrested July 22, 2014, officers seized his cell phone, which revealed a contact for "Wic" (Robinson's nickname) with phone number 313-948-8079. When law enforcement seized Robert Brown's cell phone in Spring 2016 while executing a search warrant, the phone included a contact for "Wick" with the same phone number.

The federal government obtained CSLI records for many phone numbers of interest in its investigation into the SMB under the Stored Communications Act, 18 USC § 2703(d). In the case of Robinson's phone number, however, the government was given the CSLI records by the City of Detroit Police Department under the following circumstances: On April 2, 2016, Michael Gray was shot and killed in Detroit. DPD officers recovered three cell phones from the scene and determined the last incoming phone call to the victim's phone was from 313-948-8079. On April 4, 2016, DPD Detective Laura Manzella applied for and obtained a search warrant for service provider T-Mobile, requesting certain records for that phone number, including historical CSLI. On May 3, 2016, T-Mobile

sent the CSLI records to DPD. On August 23, 2016, Detective Manzella sent a copy of the phone records to FBI Special Agent Vincente Ruiz.

**I.     Search Warrant - Probable Cause**

A search warrant is valid if probable cause existed to support its issuance. To evaluate probable cause, courts are instructed "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [it] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The facts and circumstances taken as a whole must give the magistrate probable cause to believe the items sought would be found during the search. *See, id.*, *Zurcher v. Stanford Daily*, 436 U.S. 547, 566 (1978). "[R]eviewing courts are to accord the magistrate's [probable cause] determination great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). Once a magistrate has determined the existence of probable cause, that decision should only be reversed if it was arbitrarily made. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

The government all but concedes that the search warrant in this case is not supported by probable cause.

## II. Good Faith Exception

Even where the search warrant lacks probable cause, the exclusionary rule does not apply where the law enforcement officers executing the search warrant acted in good faith in relying on the search warrant. *United States v. Leon*, 468 U.S. 897, 922 (6th Cir. 1984). The *Leon* case describes four situations where an officer's reliance on an invalid warrant cannot be considered objectively reasonable:

> (1) When the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia for probable cause that a belief in its existence is objectively unreasonable; and (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Id.* at 914-15.

Robinson argues that the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923. The Sixth Circuit has defined a so-called "bare bones" affidavit as: (1) "one that states only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge"; (2) "a conclusory affidavit, one that asserts only the affiant's belief that probable cause existed"; or (3) one that "provides nothing more than a mere guess that

contraband or evidence of a crime would be found, . . . either completely devoid of facts to support the affiant's judgment that probable cause exists, . . . or so vague as to be conclusory or meaningless." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017) (citations and internal quotation marks omitted).

By contrast, an affidavit is not bare bones—and the good faith exception applies—"if, although falling short of the probable-cause standard, it contains 'a minimally sufficient nexus between the illegal activity and the place to be searched.'" *Id.* at 496-97. While the probable cause standard requires a "substantial basis", the good faith exception is evaluated by a lower "minimally sufficient nexus" standard. The court may proceed directly to the issue of good faith where defendant challenges both the probable cause determination and the application of the good faith exception. *Leon*, 486 U.S. at 925.

Detective Manzella set forth her background and experience with DPD and described the investigation into the fatal shooting of Michael Gray. She described finding the cell phones inside the murder scene location and that the last call to the victim came from phone number 313-948-8079. Based on Manzella's training and experience, she averred that acquiring call detail records, including CSLI, can help investigators

establish "pattern of life" evidence for the target phone and whether such patterns changed around the time of the homicide. Finally, the affidavit stated that the information requested from the target phone would help uncover the persons responsible for the homicide being investigated.

In general, "the threshold for establishing [the third *Leon* circumstance]—is a high one, and it should be," because "'[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination' because '[i]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.'" *Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (quoting *Leon*, 468 U.S. at 921).

The Supreme Court has explained that the exclusionary rule's sole purpose is to deter future Fourth Amendment violations. *Davis v. United States*, 564 U.S. 229, 236-37 (2011). When lower courts determinine whether to exclude evidence, they should use a cost-benefit analysis focused on the flagrancy of police misconduct. *Id.* at 238. Evidence should not be excluded "to deter police misconduct unless the officers engage in deliberate, reckless, or grossly negligent conduct." *United States v.*

*Master*, 614 F.3d 236, 243 (6th Cir. 2010) (citation omitted); *see also United States v. Powell*, 847 F.3d 760, 772 (6th Cir. 2017).

Detective Manzella's affidavit in support of the search warrant application tied the phone number to the murder in that it was the last number to call the victim's phone. A reasonable, holistic, reading of the affidavit leads the court to draw obvious inferences, including that the three cell phones were found near the victim, that they were connected to the victim, that the last phone call to the victim from 313-948-8079 was in close proximity to the time of the shooting, and that the last phone number to call the victim was a "target telephone" important to the murder investigation because it might belong to the perpetrator or an associate involved in the shooting. The application shows some connection, at least a minimally sufficient basis, between the murder and the phone records sought.

In this case, the search warrant application was not so lacking in indicia of probable cause as to render reliance on the warrant objectively unreasonable. A neutral and detached state court judge reviewed and signed the warrant application after it was signed off on by the prosecutor. Moreover, there is no evidence that Detective Manzella engaged in the type of "deliberate, reckless, or grossly negligent conduct" that the courts have found to warrant suppression of evidence. Even if

probable cause does not support the search warrant issued in this case, the court finds that the good faith exception to the exclusionary rule applies.

## III. Inevitable Discovery Doctrine

The government argues that Robinson's CSLI records should not be suppressed for the additional reason that the inevitable discovery doctrine applies. According to the government, if the DPD had not sought and obtained Robinson's phone records as part of the Michael Gray homicide investigation in April 2016, the FBI would have obtained them through a federal § 2703(d) Order as part of its investigation into the SMB and Robinson's involvement in the Athena Hall shooting.

The inevitable discovery doctrine is an exception to the exclusionary rule which "allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (citing *Nix v. Williams*, 467 U.S. 431, 443–444 (1984)). The purpose of the doctrine is to avoid "put[ting] the police in a worse position than they would have been in absent any error or violation." *Nix*, 467 U.S. at 443. The burden of proof is on the government to establish by a preponderance of the evidence that the information inevitably would have been discovered by lawful means. *Id.* at 444.

The inevitable discovery doctrine, by its very nature, requires a degree of speculation as to what the government would have discovered absent the unlawful conduct. *United States v.* Leake, 95 F.3d 409, 412 (6th Cir. 1996). "Speculation, however, must be kept to a minimum; courts must focus on 'demonstrated historical facts capable of ready verification or impeachment.'" *Id.* (quoting *Nix*, 467 U.S. at 444-45 n.5). The inevitable discovery exception "applies when the government can demonstrate *either* the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence *or* other compelling facts establishing that the disputed evidence inevitably would have been discovered." *Id.* (quoting *United States v. Kennedy,* 61 F.3d 494, 499 (6th Cir.1995)).

In this case, the FBI was conducting an independent investigation into SMB that (1) had already identified Robinson as a participant in the Athena Hall shooting *before* DPD turned over the CSLI records to the FBI in August 2016; (2) had already acquired certain evidence that revealed Robinson's phone number *before* DPD turned over the CSLI records to the FBI; (3) corroborated through multiple sources that phone number 313-948-8079 was used by Robinson; and (4) consistently sought and obtained

CSLI records via federal § 2703(d) Orders for other SMB members' phones both before and after DPD gave the contested records to FBI.

The government attaches two § 2703(d) Orders it sought in September 2016 as part of its investigation into the SMB. (Exhibits 3-A and 4-A). The government also attaches the excerpts of phone records that T-Mobile sent to the FBI in response to those requests. (Exhibits 3-B and 4-B). As with Robinson's phone number, the cell phone provider for each of these two phone numbers was Metro PCS, which merged with T-Mobile in 2015. The first § 2703(d) Order was signed on September 2, 2016 for the phone number in Exhibit 3. The government requested CSLI records from January 1, 2015 through July 3, 2015, and the carrier produced records dating back to January 1, 2015. The second § 2703(d) Order was signed September 12, 2016 and sought CSLI records from April 1, 2015 through September 12, 2016. The carrier produced records dating back to May 1, 2015. (Exhibit 4-A and 4-B) The government also produced evidence that in 2016 T-Mobile had a policy of retaining CSLI records for two years. (Exhibits 1 and 2)

The government contends that it would have sought to discover the CSLI records for 313-948-8079 from June 7, 2015 by September 2016. The government could have expected T-Mobile to produce such records,

consistent with the information obtained by way of the § 2703(d) Orders in Exhibits 3 and 4.

The court is persuaded by the evidence cited above that the government has established by a preponderance of the evidence that it inevitably could have and would have obtained the CSLI records at issue by lawful means in September of 2016.

Now, therefore,

For the foregoing reasons, defendant Robinson's motion to suppress the Cell Site Location Information records because they were obtained through use of an invalid search warrant in violation of the Fourth Amendment is DENIED.

IT IS SO ORDERED.

Dated: January 17, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 17, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---